**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2059-22
A-3194-22

R.T.E.,[1]

    Plaintiff-Appellant,

v.

J.K.S.,

    Defendant-Respondent.

_____

Argued April 22, 2024 – Decided April 30, 2024

Before Judges Sabatino and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2495-18.

Maureen C. Pavely argued the cause for appellant (Epstein Ostrove, LLC, attorneys; Daniel Neil Epstein, of counsel and on the briefs; Jasmine Ashley Seabrooks, on the briefs).

_____

[1] We use initials to protect the privacy interests of the parties and their children. Rule 1:38-3(d).

Ashely E. Edwards argued the cause for respondent (Lawrence Law, LLC, attorneys; Jeralyn L. Lawrence, on the briefs).

PER CURIAM

These are back-to-back appeals, which we have consolidated for the purpose of issuing one opinion. In A-2059-22, plaintiff R.T.E. appeals from a March 3, 2023 Family Part order that: denied her motion to compel defendant J.K.S. to pay his one-half share of their child's college tuition; granted defendant's motion that plaintiff provide a copy of the early admission contract plaintiff and the child purportedly signed with New York University (NYU); and granted in part defendant's request to deny plaintiff's motion to compel his equal payment of the tuition. In A-3194-22, plaintiff appeals from a May 12, 2023 order, which referred to arbitration the parties' post judgment dispute over: the funding of and reimbursement from an education account for the parties' children; and settling and entering a form of qualified domestic relations order (QDRO) dividing the parties' retirement accounts. We reverse and remand both orders for further proceedings consistent with this opinion.

In June 2019, approximately one year after plaintiff initiated the divorce, the parties entered a detailed arbitration agreement, which was incorporated into a consent order entered by the court. The agreement provided the arbitrator

could, on application by a party within twenty days of the final award, modify, correct, reconsider, or grant relief from the award pursuant to Rule 4:49-2 or Rule 4:50-1. However, beyond the agreed upon twenty-day timeframe, "[t]here shall be no further jurisdiction of the arbitrator to consider any further applications of the parties, absent written consent of the parties to expand the scope of the arbitration."

The matter was arbitrated by a retired Family Part judge over the course of six days between July and October 2020, after which the arbitrator entered a final award on February 8, 2021. The arbitration award was confirmed by incorporation into a dual final judgment of divorce entered by the court on April 26, 2021.

By way of background, and as relates to the issues raised on these appeals, the parties have four children, two of whom were adults and attending college, and two younger children who were minors approaching college-age when the arbitrator rendered his decision. The arbitrator awarded the parties joint legal custody of the children and held "[t]he parties shall together make major decisions concerning their children including but not limited to, [their] . . . education." The arbitrator further found "[i]f the parents do not agree upon the college that [the two younger children] should attend, the issue will be decided

by the Family [Part] upon application made by either party." The arbitration ruling further memorialized that "[e]ach party agrees that if either of them has any knowledge of any . . . problem concerning the . . . education . . . [of the children], each parent will promptly notify the other of such circumstances and event[s]." Additionally, "[e]ach parent will be entitled to complete, detailed information from any . . . school giving instructions to the children."

The arbitrator ruled "[t]he parties shall be equally responsible for the children's . . . college related expenses." College would be funded through an education account whose balance at the time approximated $330,000. Thereafter, "[a]ll remaining unfunded . . . college costs must be borne equally by the parties. The parents must agree on the college selection for both [of the younger children]. Same must be done in writing and signed by both parties." Further, "[i]f agreement cannot be reached, then the parties may seek resolution in [the] Family [Part]. Arbitration for this issue is not mandated but may be mutually agreed upon by the parties."

The arbitrator decided the parties' 401k retirement accounts would be "equalized between the parties including market gains/losses through the date of distribution." He calculated each party's post-complaint contributions and ordered they would be deducted from the present-day value of their respective

account. He directed the parties to equally share the cost of the QDRO drafting fees.

The parties commenced their post-judgment litigation shortly following the divorce. In December 2021, defendant moved to, among other relief, enforce the provisions of the arbitration award that required both parties to jointly make decisions on behalf of the children related to their medical care. The court entered a February 8, 2022 order granting defendant's motion. Notably, the order reflected defendant's strained relationship with the youngest child and required father-son counseling if a therapist recommended it.

A few months later, plaintiff filed a motion for post-judgment relief and defendant responded with a cross-motion. Among the issues in dispute was the form of the QDRO and the actuarial calculation by the parties' joint expert to effectuate the distribution ordered by the arbitrator. Defendant's cross-motion alleged plaintiff improperly gave the information used to complete the QDRO to a third party to evaluate and requested the information. On August 2, 2022, the trial court entered an order denying defendant's cross-motion. Despite this, the August 2022 order granted defendant's request that the QDRO prepared by the expert be submitted to the plan administrator for processing.

A-2059-22

Almost immediately, plaintiff moved to correct the portion of the August 2022 order submitting the QDRO for qualification and defendant cross-moved in opposition. On October 5, 2022, the trial court entered an order granting plaintiff's motion, noting the QDRO prepared by the joint expert was for settlement purposes. Therefore, the court concluded the August 2022 order requiring the QDRO be submitted to the plan administrator was erroneous.

Subsequently, plaintiff filed a motion requesting the court enter a QDRO prepared by an expert she hired separately from the joint expert. Defendant cross-moved for denial of plaintiff's motion, and requested the court adjudicate the date of complaint as the valuation date for the parties' 401k retirement accounts plus or minus gains and losses to March 31, 2022. He claimed the March 31 date was an agreed upon cutoff date utilized by the parties and their joint expert during their discussions. Defendant requested the court order the parties to retain a new joint QDRO expert to calculate the rollover amount to equalize the parties' retirement accounts as required by the arbitration award. Plaintiff's opposition noted neither party disputed the date of complaint as the valuation date, but claimed the dispute regarded "the appropriate formula that should be used to equalize the parties' 401k retirement accounts in a manner that ensures a fair and equitable result." She pointed out the court had already

rejected using the calculations prepared by the joint expert because they were inadmissible settlement discussions. On December 2, 2022, the court entered an order referring the QDRO dispute to mediation.

Between October and November of 2022, the parties exchanged emails regarding the youngest child's college applications. On October 31, 2022, plaintiff notified defendant the child had applied to the NYU Stern School of Business, the University of Michigan, and the University of Maryland. Pursuant to the arbitration award, plaintiff was reimbursed from the education account for the application fees. The youngest child was accepted to NYU as an early decision applicant, which required him to pay an enrollment fee, withdraw his applications to the other colleges, and enroll in NYU.

On December 21, 2022, plaintiff emailed defendant asking his consent to pay the enrollment fee out of the education account. Defendant did not initially respond to plaintiff's emails, and so she paid the fee from a different source and sought reimbursement from the education account. On December 28, 2022, defendant responded to plaintiff's email and explained they could not afford NYU, and instead suggested Rutgers University and Yeshiva University.

In January 2023, plaintiff filed a post-judgment motion to compel defendant to pay his fifty percent share of the NYU enrollment fee and tuition.

A-2059-22

She certified that in October 2022, their son informed both parties that he was applying to NYU on an early decision basis, in addition to applying to Michigan and Maryland. Plaintiff's certification noted "[d]efendant replied to [their son] that those were expensive schools and asked why he did not apply to Rutgers." The son informed defendant he was not interested in Rutgers and dreamed of being accepted to NYU.

Plaintiff's certification pointed out defendant knew about the early decision application because he had agreed to reimburse her for the application fees. She claimed defendant "unquestionably understood" the early decision application process contractually obligated their son to attend NYU if he was accepted because he was "not the first of [their] children to have applied [early decision] with [d]efendant's knowledge and consent." Plaintiff pointed out defendant's claims about affordability were belied by the fact that each party earned at least $200,000, operated without debt, and invested in their retirement accounts, which far exceeded $1,000,000. She claimed defendant also had money she paid to him as a buy out of his interest in the former marital residence.

Plaintiff argued the parties could afford NYU because the education would be funded with the remaining funds in the education account, and once the account was depleted, there would be $168,000 of the NYU tuition

8

uncovered. Each party would be responsible for $84,000 or $16,800 per year for the son's five-year business school education. She claimed the parties could "easily afford" the expense based on their incomes or by reducing their 401k retirement contributions to meet their obligations.

Defendant, who at the time was self-represented, filed a cross-motion asking the court to deny plaintiff's motion in its entirety or alternatively limit his contribution to the NYU tuition to the cost of a student attending Rutgers and living on campus. Defendant's certification claimed plaintiff's December 2022 email was the first time she informed him their son had applied to college on an early decision basis. Although he agreed he approved payment of the application fees for NYU and the other schools, neither plaintiff nor their son had informed him about the early decision contract with NYU, and he was only informed that NYU was their son's first choice. Defendant claimed plaintiff refused to meet with him and their son's guidance counselor concerning the application process.

Defendant disputed plaintiff's claims the parties could afford NYU. He argued the parties' financial condition changed since the divorce because they now had to support two households instead of one. He claimed both of their

incomes had decreased, plaintiff outearned him, and the legal fees from the divorce depleted his savings.

Plaintiff's reply mostly reiterated the claims in her moving certification. She added defendant had the means to pay for NYU because he purchased a new SUV, discarded all the marital furniture and purchased new furniture, and had vacationed in Europe for two weeks.

On March 3, 2023, the motion judge entered an order granting plaintiff's request that defendant reimburse her for the NYU application fee. He denied her request to compel defendant to pay his share of the NYU tuition, and instead required the parties to deplete the education account and thereafter, any child who remained in college would have to apply for loans with the parties' co-signing those loans. The judge granted defendant's motion to compel plaintiff to provide defendant with a copy of the early admission contract. In his written findings, the judge found "it would be inequitable to require defendant to pay the NYU Stern tuition fees . . . considering the high costs of the tuition combined with defendant's apparent lack of input on the school choice despite [the] parties sharing joint custody of the child."

The judge rejected defendant's request the court limit his contribution obligation to a Rutgers tuition because "[n]one of the parties' three other children

have attended Rutgers . . . or any other in-state public school, or any school that has tuition costs comparable to Rutger[s'] in-state tuition."  Furthermore, defendant presented no evidence to show why plaintiff should be responsible for more than her fifty percent share of college.

Defendant moved to enforce the March 2023 order and compel plaintiff to produce the NYU early decision contract.  He explained he spoke to a guidance counselor at NYU, who confirmed there is an early decision application contract that is required to "be signed by the student and parents." He certified he received a "screen shot of a document," but did not receive a copy of a signed contract.

Plaintiff filed a cross-motion that mainly reiterated requests from her prior post-judgment motions that were previously referred to mediation.  Relevant to the issues raised on this appeal, she requested the court order defendant to:  pay $24,645 to the education account; reimburse her $16,500 for another child's college expenses; and approve and enter a QDRO prepared by her expert.

As regards the early decision contract, plaintiff certified she provided the document "bearing [their child's] electronic signature" to defendant.  She claimed NYU does not require a parent's signature to consider a student's early decision application.

A-2059-22

Defendant's reply certification disputed plaintiff's claims regarding the early decision application. He claimed he spoke with two NYU officials who informed him a parent had to sign the application with the student, and plaintiff still had not divulged this information. Defendant also urged the judge to reject the proposed QDRO submitted by plaintiff. He recounted the arbitrator's award and the history of the parties' dispute over the QDRO calculation, and claimed the calculation performed by her partisan expert in the proposed QDRO was incorrect. He requested the court appoint an expert and require the parties to bear the costs for the QDRO equally.

Defendant also disputed the balance of the relief sought in plaintiff's motion regarding the college account reimbursement. He claimed he did not have the means to contribute to the account because of the legal fees he accrued during the divorce, disclaimed responsibility for certain child-related expenses sought by plaintiff, and asserted she should be reimbursed from the college account. He reiterated plaintiff outearned him and had more assets at her disposal.

On May 12, 2023, the motion judge entered an order denying defendant's motion to hold plaintiff in violation of litigant's rights. The order denied the parties' requests regarding the funding of the college account, reimbursement of

college expenses, and the QDRO and referred those issues to arbitration with the parties equally bearing the cost of arbitration. Regarding defendant's enforcement motion, the judge found as follows:

> As both parties appear to have received conflicting responses from NYU admissions employees in regards to whether the relevant document exists or not, the [c]ourt is unclear as to whether the document exists or not. Given that lack of clarity, the [c]ourt is not inclined to hold plaintiff in violation of litigant's rights. The [c]ourt also considers plaintiff's email to [NYU] to be a good faith effort to obtain [the] document, if the document does exist.

As to plaintiff's request to compel defendant to contribute to the education account, the judge found the parties dispute emanated from a lack of clarity of the arbitration award and "it would not be appropriate or equitable for the [c]ourt to essentially add terms to [the arbitration a]ward." Therefore, the judge ordered the parties to return to arbitration "to determine how and when defendant will pay the sum." The judge ordered the parties to arbitration on the QDRO issue as well, because the "arbitrator is better equipped to determine the fairness and viability of a proposed QDRO than the [c]ourt."

I.

We typically "accord deference to a trial court's factfindings, particularly in family court matters where the court brings to bear its special expertise."

13

Moynihan v. Lynch, 250 N.J. 60, 90 (2022) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Ibid.

We review decisions on post-judgment motions for an abuse of discretion. D.M.C. v. K.H.G., 471 N.J. Super. 10, 27 (App. Div. 2022). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)). "However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

## II.

In A-2059-22, plaintiff challenges the portions of the March 3, 2023 order denying her motion to compel defendant to be equally responsible for the NYU tuition and compelling her to provide a copy of the early admission contract. She argues the court re-wrote the arbitration award because there was no change in circumstances warranting modification of the parties' equal responsibility to pay for college, let alone burden a child with loans, and the court's decision was

arbitrary and capricious. She asserts the court could only modify defendant's obligation if he first moved to modify it, demonstrated a change in circumstances, and the court found he had an inability to pay.

Plaintiff argues the court did not explain why it found it inequitable to require defendant to pay the NYU tuition and expenses, and its ruling was contrary to law and public policy. She contends the decision was inequitable because it imposed the financial burden of education on their son. Moreover, she maintains the record contradicts the court's finding defendant was not consulted because he certified he would "love to be able to afford to send [their son] to NYU Stern."

Among the attributes of arbitration is affording the parties finality. Fawzy v. Fawzy, 199 N.J. 456, 468 (2009) (quoting Barcon Assocs., Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 187 (1981)). As a result, for decades our Supreme Court has encouraged the voluntary arbitration of disputes on matters involving the best interests of children, including the parental obligation to support their children. Ibid. See Faherty v. Faherty, 97 N.J. 99 (1984); and Johnson v. Johnson, 204 N.J. 529 (2010).

However, arbitration determinations affecting children, such as the college contribution issue here, are not immutable. A parent's obligation to

A-2059-22

contribute to college is akin to child support and the Family Part is duty bound to assure children are fully supported by both parents. See Jacoby v. Jacoby, 427 N.J. Super. 109, 121 (App. Div. 2012). Indeed, our Supreme Court has stated:

> Nevertheless, we recognize that the courts have a nondelegable, special supervisory function in the area of child support that may be exercised upon review of an arbitrator's award. We therefore hold that whenever the validity of an arbitration award affecting child support is questioned on the grounds that it does not provide adequate protection for the child, the trial court should conduct a special review of the award. This review should consist of a two[-]step analysis. First, as with all arbitration awards, the courts should review child support awards as provided by [statutory grounds to overturn an award]. Second, the courts should conduct a de novo review unless it is clear on the face of the award that the award could not adversely affect the substantial best interests of the child.
>
> [Faherty, 97 N.J. at 109-10].

Another fundamental principle is that the court has the power "to hear and decide motions . . . exclusively upon affidavits." Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976). However, a trial judge should order a plenary hearing "where the affidavits show that there is a genuine issue as to a material fact, and . . . the . . . judge determines that a plenary hearing would be helpful." Murphy v. Murphy, 313 N.J. Super. 575, 580 (App. Div. 1998) (quoting Shaw,

16

138 N.J. Super. at 440). A material factual dispute is one that "bear[s] directly on the legal conclusions required to be made and [such] disputes can only be resolved through a plenary hearing." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 540 (App. Div. 2015).

Here, although neither party filed a Case Information Statement (CIS) or formally moved to modify the arbitration award, there were several disputes of material fact related to whether defendant was responsible for his share of the NYU tuition, and if so, whether both parties could afford to pay the tuition as required by the arbitration award. The parties disputed their incomes and assets and whether they should pay for the uncovered portion of the NYU tuition using their income, equitable distribution, retirement assets, or another source.

Before the court could resolve the affordability issue, it first had to resolve the dispute about whether defendant had notice of the early decision application consistent with the arbitration rulings regarding parental participation in education decisions and the choice of college. The record is clear the parties historically did not communicate with one another in an effective manner, as demonstrated by the tone of their correspondence and numerous post-judgment motions. Moreover, as we noted, defendant's relationship with the youngest

child appeared to be strained, as the court directed them to consider father-son therapy.

For these reasons, we reverse and remand paragraphs two, five, and seven of March 3, 2023 order, which adjudicated the parties' dispute regarding the early admission contract and payment of the NYU tuition, and direct the trial court to hold a plenary hearing. At oral argument, we were advised the youngest child is concluding a gap year and plans to commence at NYU in the fall of 2024. Although we understand funds remain in the education account to meet part of the NYU tuition, we commend the trial court to: expeditiously schedule a case management conference with the parties; set a shortened discovery schedule, including requiring the parties to exchange CISs; and conduct the plenary hearing as soon as practicable.

III.

In A-3194-22, plaintiff argues the court's May 12, 2023 order directing the parties back to mediation was invalid absent their consent. She points out the arbitration agreement terminated the arbitrator's jurisdiction twenty days after he rendered his award. Therefore, the motion judge should have adjudicated the college account contribution and reimbursement issues, as well as the QDRO dispute. Defendant joins plaintiff's argument on this appeal.

"An arbitration agreement is a contract, and is subject, in general, to the legal rules governing the construction of contracts." McKeeby v. Arthur, 7 N.J. 174, 181 (1951) (internal citation omitted) (citing Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. 1 (E. & A. 1934)). Courts are obligated to examine a contract's "plain language . . . and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." Highland Lakes Country Club & Comty. Ass'n v. Franzino, 186 N.J. 99, 115 (2006). "It is not the court's function to make a contract for the parties or to supply terms that have not been agreed upon." Schenck v. HJI Assocs., 295 N.J. Super. 445, 450 (App. Div. 1996). "When terms of a contract are clear 'it is the function of the court to enforce it as written and not to make a better contract for either party.'" Ibid. (quoting U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n, 67 N.J. Super. 384, 393 (App. Div. 1961)).

The parties' arbitration agreement terminated the arbitrator's jurisdiction and in turn, the arbitration itself, twenty days after entry of the arbitration award. Therefore, absent the parties' consent to continue with arbitration, the motion judge could not compel it.[2]

---

[2] At oral argument on the appeal, both counsel acknowledged that if the court's order mandating arbitration were reversed as they urged, the parties would still

For these reasons, paragraphs four, five, six, ten, eleven, and twelve of the May 12, 2023 order related to the parties' dispute regarding funding and reimbursement of the education account, and approval of a form of QDRO, are reversed and remanded to the trial court to adjudicate in the first instance. Finally, although we express no preference regarding how the court should adjudicate these issues, we note the principles expressed in Section II of this opinion apply; namely, that if there are disputes in material facts, the better practice is to adjudicate them by way of a plenary hearing.

Reversed and remanded in A-2059-22 and A-3194-22. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

be free to mutually choose to submit to an alternate dispute resolution process, if necessary.